UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **SHERIE CLEARY,** individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>vs.<br>**AGORA NOTUS, LLC** and **RELOGIO LLC**, *doing business as* "**COMPLETE CASH DISCOUNT TITLE PAWN**," and **EMPLOYMENT INNOVATIONS, INC.** and **EMPLOYMENT ALLIANCES, LLC**, *doing business as* "**ETOWAH EMPLOYMENT**,"<br><br>Defendants. | Civil Case No.: 4:19-cv-00130-LMM |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION**

Defendants concede Plaintiffs' burden at the conditional certification stage is not a heavy one. Plaintiffs need not prove a unified wage payment policy or plan to satisfy the "more liberal 'similarly situated' requirement of § 216(b)." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Simply "a modest factual showing" is sufficient to demonstrate that they and potential collective members together were victims of a common policy or plan that violated the law. *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1236 (S.D.Ala. 2008). Plaintiffs' pleadings, supporting declarations and exhibits, have satisfied the lenient standard

1

of establishing Defendants' commonly applied policies and practices of classifying their Pawn Store "Managers" as exempt from overtime and requiring them to work beyond forty without the premium required by the Fair Labor Standards Act (the "FLSA"). Further, they did not rebut at least one central thread that ties the collective together regarding the exploitation of taking advantage of salary when the workers exceeded forty hours, but conversion to hourly pay when it dipped below.

The bulk of Defendants' opposition is their belief that Plaintiffs did not go far enough to explain in detail the job duties of all the Store Managers. This argument fails as a matter of procedure since issues of that kind are reserved for the decertification stage. Defendants do not deny they want to bake their cake and eat it too with regard to improperly converting salaried workers into hourly for weeks they worked below forty, nor can they, since in May 2019 they reclassified the "Store Manager" position to pay overtime. Courts routinely certify a collective when the position at issue is reclassified, which confirms the existence of putative collective members, and is further, an admission of a wrongdoing. *See, e.g., Shaw v. Bank of Am., N.A.*, No. 1:08-cv-2819, 2009 U.S. Dist. LEXIS 137639 (N.D.Ga., April 10, 2009) (granting conditional certification to field examiners who were reclassified to non-exempt from exempt).

Instead, Defendants argue since the granular particulars of the wage violations were not pled with specificity in the complaint, it should not be counted

or perhaps it should be discounted. Their lack of an outright denial of the practice of having the benefit of the bargain both ways with the wages is a tacet concession that Plaintiffs are correct, not just by modest showing, which is the standard that was advanced, but by a standard that can be easily proven throughout the collective by viewing the Store Managers' time records and paystubs.

There are other former and current Pawn Store "Managers" who are victims of such policies and practices and whose statute of limitations are running day by day without knowing their right to seek unpaid overtime compensation. To refuse conditional certification is to award employers for shorting workers pay. Plaintiffs' request for conditional certification should be granted as soon as the Court deems appropriate so that hard-working employees have an opportunity to seek compensation for the overtime hours they worked.

I. **STORE MANAGERS ARE SIMILARLY SITUATED**

**A. Defendants' Misinterpretation of Plaintiff Veal's Declaration**

Defendants' allegation that "Mrs. Veal goes on to state that she observed Mrs. Jackson merely 'attended to potential customers, customers and handle phone calls during lunch breaks'" is a deceptive twist of Plaintiff Veal's statement, because Ms. Veal's language is devoid of "merely" or any word of similar effect. A deliberate misstatement. *See, e.g., Longcrier*, 595 F. Supp. 2d at 1242 ("Defendant too often picks and chooses the evidence that it likes, while disregarding everything

else.") Plaintiff Veal's observation that her co-worker, another Store Manager, Ms. Jermicka Jackson, often "attended to potential customers, customers and handle phone calls during lunch breaks," does nothing to speak to the assertion that Plaintiff Jackson performed the same job duties through the day. Defendants' conclusion that Plaintiff Veal and Plaintiff Jackson had different job duties just because Plaintiff Veal's declaration did not expressly state so or simply because they were working at the same time in the same store does not make any logical sense.

In addition, Defendants attempt to cause misimpression on the Court that "there will inevitably be two subsets of store managers." There is only one group of Store Managers subject to the instant Motion. If there was a subset, which is not the case in reality, Defendants may be able to flush it out during the decertification stage and after discovery has been largely completed, but not at this conditional certification stage.

Plaintiffs' personal knowledge of their job duties and the complained pay policies and practices derive from their actual work experience as Store Managers at Defendants' pawn stores and interactions with its other "Managers." *See* Dkt. 45-6 (Cleary Decl.), ¶ 4, Dkt. 45-7 (Hamilton Decl.), ¶ 4; Dkt. 45-8 (Veal Decl.), ¶ 4. Regardless each pawn store had one or two Store Managers (*see* Cleary Decl., ¶ 5; Hamilton Decl., ¶ 5; Veal Decl., ¶ 5), the Store Managers were all classified as

4

exempt from overtime. *See* Cleary Decl., ¶ 15; Hamilton Decl., ¶ 15; Veal Decl., ¶ 17.  They were all paid a salary when they worked beyond forty a week. *See* Cleary Decl., ¶ 16; Hamilton Decl., ¶ 16; Veal Decl., ¶ 18.  Their wages were calculated on an hourly basis when they worked less then forty a week. *Id*.  Their job duties were the same. *See* Cleary Decl., ¶ 9; Hamilton Decl., ¶ 9; Veal Decl., ¶ 10.  As a Store Manager, opt-in Plaintiff Ms. Veal "performed a wide range of job responsibilities, such as handing out flyers for potential customers, preparing and offering refreshment for potential customers, dealing and communicating with customers, processing, and collecting payments from customers, preparing and completing deposits, and cleaning the store." The named Plaintiff Cleary and opt-in Plaintiff Hamilton declared the same. *Id*.  Plus, it is not just about the duties. Defendants fail to rebut the illegal pay scheme in which Store Managers who worked over forty hours were paid a salary and those that worked below forty were paid on an hourly basis.

**B.   Plaintiffs' Substantiation of Defendants' Commonly Applied Policies and Practices that Violated the FLSA**

A plaintiff bears the burden of demonstrating a "reasonable basis" for the claim of "class-wide" wage policies and practices in a FLSA context, and may satisfy this burden "by making substantial allegations" of such "class-wide" policies and practices.  *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).  Plaintiffs have presented together four (4) declarations in support of

5

conditional certification – three (3) from Plaintiffs and one (1) from the Defendants' former payroll clerk who reviewed the Store Managers' time records and processed payroll. These declarations, consistent with Plaintiffs' First Amended Complaint (the "FAC"), made substantial allegations on the Defendants' common policies and practices of how they failed to pay Store Managers' overtime.

Both the FAC and the supporting declarations assert that the Store Managers were not paid overtime premium. *See* Dkt. 12, ¶ 3; Cleary Decl., ¶ 21; Hamilton Decl., ¶ 21; Veal Decl., ¶ 23. Defendants' Answers conceded Store Managers were classified as exempt from overtime. *See* Dkt. 28, at 2, and Dkt. 30, at 2. Both the FAC and the supporting declarations assert that the Store Managers were paid a salary. *See* Dkt. 12, ¶ 37; Cleary Decl., ¶ 16; Hamilton Decl., ¶ 16; Veal Decl., ¶ 18. The supporting declarations further assert that when the Store Managers worked less than forty a week, their pay was computed by hour. *See* Cleary Decl., ¶ 16; Hamilton Decl., ¶ 16; Veal Decl., ¶ 18. This is not an expansion of Plaintiffs' overtime claims, but a substantiation of how the companies shorted the Store Managers wages, how the complained common policies and practices were implemented, and why the Defendants' purported exemption should lose.

Defendants mistakenly cited *Bouton v. Ocean Properties, Ltd*, 322 F.R.D. 683 (S.D. Fla. 2017) while *Bouton* only discusses Rule 23 class certification on claims brought under the Fair and Accurate Credit Transactions Act ("FACTA")

6

but the pending Motion seeks Rule 216(b) conditional certification under the FLSA. The onerous Rule 23 standard is much different than the lenient 216(b) collective standard, and FACTA is not FLSA, thus, *Bouton* is simply inapplicable.

### C. Plaintiffs' Sufficient Showing of Interest to Opt-In

*Sandate v. Makotek, LLC*, No.: 6:06-cv-601, 2006 U.S. Dist. LEXIS 101811 (M.D.Fla., Sept. 6, 2006), *adopted by Sandate v. Makotek, LLC*, No.: 6:06-cv-601, 2006 U.S. Dist. LEXIS 70596 (M.D.Fla., Sept. 28, 2006) is different from the present case.  There, two plaintiffs moved for conditional certification on behalf of a group of technicians; the defendant opposed by submitting its managers' affidavits that the company had two separate divisions in Florida and the plaintiffs were only employed in one. *Id.*, at *8. In addition, the defendant submitted affidavits of six current and former technicians who stated they were paid overtime for all hours worked and had no desire to be involved in such lawsuit. *Id*.  By contrast, here one named Plaintiff and four opt-in Plaintiffs are moving for conditional certification with four supporting declarations with specific allegations of the companies' common policies and practices. Complete Cash did not rebut their illegal practices, proffer any evidence as to division differences or any lack of desire to opt-in from any potential collective members.

In determining whether a plaintiff has made sufficient showing of interest to opt-in, courts do not require a certain number of opt-in plaintiffs. *See, e.g., Rangel*

*v. Compliance Staffing Agency, LLC*, No. 3:16-CV-30, 2016 U.S. Dist. LEXIS 89780, at *9-10 (M.D.Ga., July 12, 2016) (rejecting the standard of requiring "a critical mass of similarly situated employees to opt in" and granting conditional certification upon consideration of three opt-in plaintiffs). Indeed, "the Court does not find such an approach supported by Eleventh Circuit precedent, which makes it clear that *a more lenient standard* should be applied at the conditional certification stage." *Id.*, at *9 (emphasis added). *See also Ciani v. Talk of the Town Rests., Inc.*, No. 8:14-cv-2197, 2015 U.S. Dist. LEXIS 5580 (M.D.Fla., Jan, 16, 2015) (noting "there is no magic number requirement for the notice stage" and granting conditional certification upon consideration two opt-in plaintiffs), and; *Pendlebury v. Starbucks Coffee, Co.*, No. 04-cv-80521, 2005 U.S. Dist. LEXIS 574 (S.D. Fla. Jan. 3, 2005) (granting conditional certification upon consideration of four affidavits from store managers complaining of improper exemption from overtime).

Defendants argue that because all of the Plaintiffs are from Macon and Warner Robins of Georgia, conditional certification could not be granted to all of the pawn stores in Georgia. "In *Haynes*…Plaintiffs' [two employees from a single store] counsel *presented absolutely no* evidence to the court indicating that individuals would come forth from other stores in Florida, and the court refused to conditionally certify." *Roots v. Morehouse Sch. of Med., Inc.*, NO. 1:07-CV-0112, 2008 U.S. Dist. LEXIS 129146, at *13 (citing *Haynes v. Singer Co.*, 696 F.2d 884,

8

887 (11th Cir. 1983)). This case is different. Complete Cash operates its pawn stores throughout the State of Georgia. The Store Managers' time records and wages are reviewed and processed by the corporate office. *See* Caudill Decl., Dkt. 45-9, ¶¶ 3-5. Plaintiffs Cleary, Veal and Hamilton worked at three different pawn stores, not the same store. They all attested to the Defendants' commonly applied policies and practices of misclassifying the Store Managers as exempt from overtime and requiring them to work overtime and off the clock without the proper overtime wages. *See generally* Cleary Decl., Hamilton Decl., and Veal Decl. Defendants' former payroll clerk Ms. Caudill worked at the corporate office, and she also attested to the same policies and practices. *See* Caudill Decl., ¶¶ 9-15. All declarations state the high turnover rate of the Store Managers and that Defendants' same policies and practices were applied to all other Store Managers. *See generally* Cleary Decl., Hamilton Decl., Veal Decl., and Caudill Decl. Hence, it is reasonable to conclude that "aggrieved individuals existed" in the proposed collective and there would be other Store Managers willing to opt-in upon receipt of the collective action notice. Furthermore, Complete Cash did not submit any evidence indicating any Store Manager would not want to join this case. *See, e.g., Roots*, 2008 U.S. Dist. LEXIS 129146, at *15 (noting the defendant did not submit affidavits indicating that subject employees would not want to join the suit). For these reasons, Plaintiffs have made a sufficient showing of interest to opt-in.

## II. PLAINTIFF'S PROPOSED NOTICE AND CONSENT FORM ARE RESONABLE

### 1. Collective Definition - 3-Year Limitation Period:

Defendants consent to the three (3) year time period but dispute the proposed starting date. Plaintiffs seek the Court's approval of equitable tolling for putative collective members as of March 6, 2020, the date that Plaintiffs filed the instant Motion for Conditional Certification, due to the unprecedented, on-going Covid-19 pandemic.

"The doctrine of equitable tolling abates the harsh operation of the statute of limitations *under certain circumstances in which barring a plaintiff's potentially meritorious action would be unjust.*" *Justice v. United States*, 6 F.3d 1474, 1475 (11th Cir. 1993) (emphasis added). "[C]ourts, acting in their equitable capacity, will toll statutes of limitations, but 'only upon finding an inequitable event that prevented plaintiff's timely action.'" *Id*., 1479 (quoting David D. Doran, Comment, *Equitable Tolling of Statutory Benefit Time Limitations: A Congressional Intent Analysis*, 64 Wash.L.Rev. 681, 682 (1989)). Here, the Plaintiffs have been advancing the case diligently. The discovery started on February 5, 2020; Plaintiffs moved for conditional certification on March 6, 2020. "The benefits conferred by collective action in Section 216(b) cases 'depend on employees receiving accurate and timely notice.'" *Miller v. Fleetcor Techs. Operating Co., LLC*, No. 1:13-CV-02403, 2014 U.S. Dist. LEXIS 200077, at *13

(N.D.Ga., April 8, 2014). The unprecedented Covid-19 pandemic will cause inequity to the putative collective members because it undoubtedly has disrupted the majority American people's lives with many States implementing "Shelter-in-Place" and "Stay-at-Home" orders, limited the courts' normal operation and interrupted routine court proceedings, and as a result caused delays in issuing orders and decisions.  It is also anticipated that if the Court grants conditional certification, it would take additional time to mail merge the collective notice and consent to sue form and equally extra time for the notice packet to arrive at each putative collective member due to irregularities and interruptions caused by the virus. Defendants reclassified Store Managers from exempt to non-exempt in May 2019. The putative collective members' statutes of limitations continue to run during this Covid-19 pandemic through no fault of their own.  The employees should not be punished by this unforeseeable pandemic. Hence, the Plaintiffs seek the Court in exercising its equitable capacity to grant equitable tolling for the justice of the other Store Managers and define the scope of the collective as "… *in the State of Georgia from March 6, 2017 to the present.*"

2. **Manner of Notice Transmittal:**

Defendants proposed and requested Plaintiffs to "file an advisory, indicating the date of transmitting the notices, with the Court within 3 days of initially transmitting the notices."  Plaintiffs request the time period be extended to five (5)

business days, instead of three (3) days.

### 3. Numerosity of Notices:

To clarify, Plaintiffs do not request to send notice reminders.

### 4. The Content of the Collective Action Notice:

**a)** Defendants' proposition that "Plaintiff's use of 'A federal court approved this notice' at the beginning of the notice while waiting to the very end of the notice to add disclaimer language is purposely deceitful" is baseless. Plaintiffs cannot send out a collective action notice with the consent to join form without this Court's approval. Plaintiffs' pending Motion is to seek this Court's approval of conditional certification and the dissemination of the collective action notice including the content of the notice. Regardless, Plaintiffs do not oppose Defendants' proposed language.

**b)** Plaintiffs' description of the case does not expand the scope of the litigation. The purpose of the collective action notice is to inform the putative collective members of the present action and their rights, and why they are receiving this notice. Section 2 of the notice defines the "Collective" as "[a]ll Store Managers who Worked at any of the Complete Cash Discount Title Pawn stores in the State of Georgia" during the applicable time period. *See* Dkt. 45-2. Accordingly, any Store Manager who worked for Defendants during time period approved by the Court is covered by the conditional certification. The description

that "Plaintiff asserts that Complete Cash… paid Store Managers by hour when they worked less than forty (40) a week" is a substantiation of the complained wage and hour practices, and does not expand the scope of the proposed collective.

**c)** Plaintiffs do not oppose Defendants' proposed language for their description of the case.

5. **Description of Plaintiffs' Obligations:**

Courts typically reject notice language that are unnecessarily strong, and likely to chill potential collective members' participation. In *Miller v. Fleetcor Techs. Operating Co., LLC*, 2014 U.S. Dist. LEXIS 200077, the court rejected the defendant's proposed language that the putative collective member "will be expected to participate in the litigation and . . . may be required to provide information and documents, appear to give a deposition, and/or testify in court," and approved the plaintiff's notice that stated an opt-in plaintiff might be required to provide information or otherwise participate in the litigation. *Id.*, at *20-21. See also *Rindfleisch v. Gentiva Health Services, Inc.,* No. 1:10-cv-3288, 2011 U.S. Dist. LEXIS 57949 (N.D. Ga. April 13, 2011) (approving a collective action notice that did not warn of costs or the burdens of litigation).

Plaintiffs propose the language - "may be required to provide information or otherwise participate in the litigation" as approved in *Miller*, to add in Section 7 of the collective notice and revise that Section as the following:

> "If you choose to join this suit, you will be bound by the judgment whether it is favorable or unfavorable, or to any settlement of this action, if a settlement occurs. You may be required to provide information or otherwise participate in the litigation if you elect to join this case. Your legal interests will be represented by the law firms listed in Section 8 below. These attorneys are being paid on a contingency basis: there is no monetary recovery, there will be no attorney's fees. If there is a recovery, the attorneys will seek to have fees and expenses covered and paid for by Complete Cash, because under the FLSA a prevailing plaintiff's counsel fees and costs will be paid by the employer."

### III. CONCLUSION

Conditional certification is warranted since there are substantial allegations describing Defendants' commonly applied policies and practices of classifying and thus, misclassifying Pawn Store "Managers" as exempt from overtime and failing to pay them overtime wages. Plaintiffs' supporting declarations reasonably indicate that other Store Managers may join this action upon receipt of the collective action notice.

A pawn store functions by enabling individuals to collateralize valuable goods with a high interest emergent loan based on a fraction of the goods' worth. If individuals are able to repay the exorbitant loan in a timely manner, they receive their goods back; if they do not, the pawn store may realize a profit many times over what the item was pawned for. The law permits them to win both ways with their customers and to some extent it is that behavior that emboldened them to treat their employees in the same manner in which they tried to have the benefit of both ways of the bargain with the salary, even though the Store Managers' duties did not

justify putting those employees on salary in the first place. The Defendants recognize the correctness of Plaintiff's legal position as it already reclassified the position to now pay overtime. Thus, constructively, prospective relief is already granted, and this case is now about remediation and the right for people who might be entitled to compensation to be informed of that opportunity.

On behalf of all hard-working Store Managers, Plaintiffs seek approval of conditional certification so that each covered individual has an opportunity to recover what Defendants shorted them and an opportunity to be head regarding an issue that directly affects them.

Dated: April 3, 2020

Respectfully submitted,

BROWN, LLC

By: s/ Jason T. Brown
Jason T. Brown (Admitted *Pro Hac Vice*)
Zijian "Coco" Guan
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Phone: (877) 561-0000
Fax: (855) 582-5297

-And

THE ORLANDO FIRM, P.C.
Roger W. Orlando
315 W Ponce de Leon Ave #400
Decatur, GA 30030
Phone: (404) 373-1800
Fax: (404) 373-6999

*Attorneys for Plaintiffs*

I, Jason T. Brown, certify that this brief has been prepared with Times New Roman (14 point) and format as approved by the Court in LR 5.1B, and that this brief does not contain more than 10 characters per inch of type.

/s/ Jason T. Brown
Jason T. Brown

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on April 3, 2020 via CM/ECF notification.

s/ Jason T. Brown
Jason T. Brown